JACKSON v. JACKSON et al.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1909.)

No. 774.

1. APPEAL AND ERROR (§ 79*)—DECISIONS REVIEWABLE—FINALITY OF DETERMINATION—DISMISSAL AS TO ONE OR MORE PARTIES.

In a suit in which complainant prayed for a cancellation of certain conveyances of real property and a partition of the same, or in case the court should find that she was not so entitled as alternative relief for an accounting against other defendants who caused the property to be conveyed, a decree finding that she was not the owner of any interest in the real estate and not entitled to partition, and dismissing the bill as against the defendants holding the legal title, was final and conclusive as to the first branch of the case, involving title to the lands, and as between complainant and the parties dismissed, and is appealable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 485; Dec. Dig. § 79.*

Finality of judgments and decrees for purposes of review on error or appeal in the federal appellate courts, see notes to Brush Electric Co. v. Electric Imp. Co. of San Jose, 2 C. C. A. 379; Central Trust Co. v. Madden, 17 C. C. A. 238; Prescott & A. C. Ry. Co. v. Atchison, L. & S. F. R. Co., 28 C. C. A. 482.]

2. COURTS (§ 309*)—JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—FORMAL PARTIES.

The jurisdiction of a federal court will not be permitted to be defeated by either the nonjoinder or joinder of mere formal parties against whom no relief is sought, and, if necessary to sustain such jurisdiction, parties who are not indispensable should not be impleaded, and if made defendants they should be dismissed.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 857; Dec. Dig. § 309.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

---

**3. EQUITY (§ 145*)—PLEADING—MULTIFARIOUSNESS.**

A bill is not multifarious because complainant prays for different relief in the alternative, where the facts pleaded warrant a bill with such double aspect.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 339; Dec. Dig. § 145.*]

**4. TRUSTS (§ 147*)—TRANSFER OF INTEREST OF CESTUI QUE TRUST—RIGHTS OF PURCHASER.**

Where one having an equitable interest in certain real estate joined in contracts authorizing the trustee who held the title to convey the same, and after such conveyance gave an option for the purchase of his interest in the profits realized out of the transaction in which the lands were purchased, the holder of such option took no interest in the lands, and is estopped to attack the conveyance or title of the grantee.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 192; Dec. Dig. § 147.*]

**5. EQUITY (§ 72*)—LACHES—PREJUDICE FROM DELAY.**

A complainant, who claimed an equitable interest in certain coal lands through purchase of the rights of a part owner who had previously consented to their conveyance, but who took no steps to assert such interest for more than three years and until the grantees by large expenditures had greatly increased the value of the lands, was barred by laches from then maintaining suit in equity to recover such interest.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 212–220; Dec. Dig. § 72.*]

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

Suit in equity by Ida G. Jackson against Henry C. Jackson and others. From a decree sustaining a demurrer by certain defendants and dismissing the bill as to them, complainant appeals. Affirmed.

James S. McCluer and Seth T. McCormick (McCluer & McCluer, on the brief), for appellant.

B. M. Ambler and Wm. Beard (W. W. Van Winkle, Mason G. Ambler, and V. B. Archer, on the briefs), for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

GOFF, Circuit Judge. It is alleged in the bill that in November, 1899, H. C. Jackson, A. B. White, G. A. Newlon, and W. W. Jackson entered into an agreement that they would furnish in equal amounts money sufficient to option and control what was called the "Gilmer county coal field," in West Virginia; that in their written contract it was set forth they should share alike in all the options, which were taken some in the name of G. A. Newlon, some in the name of A. B. White and H. C. Jackson, and many of them in the name of George Gillmor, trustee, who was acting as their agent; that in the year 1900 they concluded to take no more options on said coal lands, having then acquired about 25,000 acres; that during the time these options were being taken David A. Nease and those associated with him, were also taking like options on coal lands in the same locality, which frequently conflicted with those which had been acquired by H. C. Jackson and those interested with him, thereby causing controversies

between such claimants; that in adjustment of the same an agreement was entered into on May 5, 1900, between the parties interested in such options, by which it was provided that the then pending suits concerning them should be dismissed, and that the coal rights involved should be held by Gillmor, as trustee, under the terms of said agreement; that H. C. Jackson and his associates should form a corporation, to which said trustee should convey the interests so held by him, when requested by said Jackson, A. B. White, G. A. Newlon, and W. W. Jackson so to do, such conveyance to be as required by the stipulations of said agreement; that it was also agreed that said Jackson and associates should arrange for the extension and construction of the Little Kanawha Railroad into the region of the coal field mentioned, and should organize a corporation for the purpose of taking over the options referred to; that if said railroad was so constructed Nease and his associates were to have one-fifth of the royalty paid for the coal that might be mined from the property, but if the road was not built by December 1, 1900, then said parties were to have an undivided $^{40}/_{100}$ interest in the coal, while Jackson and his associates were to own the remaining $^{51}/_{100}$ thereof; that in November, 1900, the last-named parties made two contracts, one with B. E. Cartwright, of the first part, George Gillmor, trustee, of the third part, and the Little Kanawha Railroad Company, of the fourth part—said Jackson and associates constituting the parties of the second part—by which agreement Cartwright, in conjunction with Jackson and associates, was to cause to be performed all the acts set forth therein as essential to the requirement that Gillmor, trustee, should account to Jackson and associates for all the profits accruing from said coal rights, except the royalty provided for Nease and his associates; that it was also provided in such agreement that the parties to it should at an early day organize a corporation under the laws of the state of West Virginia to which the trustee, Gillmor, was to convey the legal title of the coal options held by him. Other provisions of that contract are not essential to the disposition of the questions now before this court.

It further appeared from the bill that Cartwright failed to comply with the terms of the agreement, and, after having paid considerable sums of money in an effort so to do, forfeited the same, no further proceedings having been taken under it; that by the other agreement, made in November, 1900, it was provided that a consolidated company should be formed, which should take over the Little Kanawha Railroad Company and the coal properties mentioned; that under the contract of May 5, 1900, the Braxton Coal Company was organized, and Gillmor, trustee, conveyed to it all the contracts, options, and rights held by him relating to said coal lands, the deed for the same bearing date November 28, 1900, complainant alleging that W. W. Jackson—under whom she claims—was not a party to the formation of that company, and that he has not, nor has she, ever received any of its stock; that under the first agreement W. W. Jackson paid for the use of the partnership so formed the sum of $1,250, and that he on April 11, 1901, made a contract with H. C. Jackson, in which he gave the latter an option to purchase all of the right, title, and interest of him, said W. W. Jackson, in the profits on the coal mentioned,

under which option H. C. Jackson purchased said rights for the sum of $3,000, and on June 5, 1901, sold and assigned them to the complainant for the sum of $3,200; that the Braxton Coal Company, after the conveyance to it of said coal properties by Gillmor, trustee, sold and conveyed the same to Richard C. Kerens, trustee, for the sum of $17 per acre, who as such trustee, by deed dated November 28, 1903, conveyed them to the Washington Coal & Coke Company, which company on the 23d of January, 1904, sold and conveyed the same to the Coal & Coke Railway Company.

The said Kerens is alleged as having acted as trustee for Stephen B. Elkins and Henry G. Davis, citizens of the state of West Virginia, who with the companies mentioned and the other parties referred to, except Cartwright, were made defendants to this bill. The complainant asked the court to decree that she was the owner of an undivided one-fourth interest in the lands referred to; that the deed from Gillmor, trustee, to the Braxton Coal Company, and all subsequent deeds conveying said lands, be set aside as in fraud of her rights; that, if possible and equitable, a partition of the lands be made among those entitled thereto; otherwise, that they be sold and the proceeds be distributed among the parties, as their interests should be made to appear to the court. Complainant further prayed that, if the court should find that a specific execution of the original contract could not be decreed, she might then be granted alternative relief, in this: That the cause be referred to a commissioner, with directions to ascertain and report the amount of coal and coal lands that came into the ownership of H. C. Jackson and his associates under the agreements mentioned, their value and the purchase cost of the same, the costs and expenses incurred in procuring them, and that then said Jackson and associates be decreed to pay her the proportion thereof found to be due her.

To this bill H. C. Jackson, A. B. White, G. A. Newlon, and G. A. Newlon, trustee, filed their demurrer, assigning as grounds therefor that the court was without jurisdiction; that complainant claims that on June 5, 1901, H. C. Jackson assigned to her an option that had been on April 11, 1901, made by W. W. Jackson, whereby the latter agreed, upon payment of $3,000 in 90 days, to convey to said H. C. Jackson all of the profits to which W. W. Jackson could be entitled under certain contracts dated May 5, 1900, and November 17, 1900, which profits were to arise from coal properties vested in the Braxton Coal Company; that the contracts mentioned required the defendant Gillmor, trustee, to convey all said property to a coal company when formed; that the Braxton Coal Company was formed pursuant to the contracts, as is shown in the bill, which contracts W. W. Jackson had executed; that the contract of November 17, 1900, limited the claim of W. W. Jackson to a share of profits and to having a refund of the money expended by him; that W. W. Jackson and any one claiming under him was estopped from claiming more than his share in the profits arising from the sale of the coal, after having been repaid the money advanced by him; that with such allegations in the bill complainant asks for a decree against the defendants, based on the present value of one-fourth of the property; that H. C. Jackson assigned to complainant any right

he had under the option from W. W. Jackson, expressly providing that there should be no recourse on him, and that nevertheless complainant seeks to hold all the defendants equally liable; that complainant is estopped by the terms of the option, under which she claims, and by the contracts referred to, to dispute the validity of the deed which vested in the Braxton Coal Company all the interests of W. W. Jackson in said coal properties; that the complainant is estopped by laches, having waited until the coal lands had been transferred to the railroad company and had greatly increased in value, before she instituted her suit; that the bill is multifarious; that the suit is instituted by complainant, a resident and citizen of Pennsylvania, and that one of the defendants, W. W. Jackson, is also alleged to be a resident and, citizen of that state, and that George Gillmor, trustee, a defendant and a necessary party, is also a resident and citizen of the same state. Other grounds of demurrer assigned by the defendants mentioned will not now be referred to; they not being material to the questions to be disposed of. This demurrer was overruled by the court below; the decree entered concerning it not being directly involved in this appeal.

The defendants Richard C. Kerens, in his own right and as trustee, S. B. Elkins, Henry G. Davis, the Washington Coal & Coke Company, and the Coal & Coke Railway Company filed a demurrer to the bill, setting forth as cause, among other reasons, that complainant, a citizen of Pennsylvania, has named as defendant George Gillmor, trustee, likewise a citizen of Pennsylvania, charging fraud and breaches of trust against him, and praying the cancellation of a deed of November 28, 1900, from him, as trustee, to the Braxton Coal Company, for the property subsequently purchased by such demurrants; that therefore Gillmor is an indispensable party to this controversy, and that, as he is of the same citizenship with complainant, the court has no jurisdiction; that W. W. Jackson, a defendant, is also a citizen of Pennsylvania, and that B. E. Cartwright, who is not impleaded, is an indispensable party; that complainant is estopped by laches, acquiescence, and her conduct to assert the claims set up in her bill. Other grounds assigned by these defendants in their demurrer are similar in character to those set forth in the demurrers of their codefendants. The Braxton Coal Company also filed a separate demurrer, assigning as cause therefor the same reasons in substance as those set out in the demurrers referred to.

The court below held the demurrers tendered by the defendants, the Braxton Coal Company, R. C. Kerens, in his own right and as trustee, Stephen B. Elkins, Henry G. Davis, the Washington Coal & Coke Company, and the Coal & Coke Railway Company, to be well founded, and from the decree sustaining them, as well as from the order dismissing the cause as to the defendants so pleading, the appeal now under consideration was sued out. Before entering the order of dismissal as to said defendants, the court gave leave to complainant to amend her bill; but this in open court she declined to do.

We have first to dispose of the motion to dismiss the appeal, made by the appellee H. C. Jackson, for the reason that the decree of June

25, 1907, is not final, as it only dismisses the bill as to some of the defendants, leaving it pending as to the others. It will be observed that the complainant prays for a decree adjudicating that she is entitled to an undivided interest in certain real estate, and to a partition thereof, as against the holders of the legal title, or, if that should be found impracticable, then for a sale of the property and distribution of the proceeds; alternatively, should the court be of opinion that she was not so entitled, then she asks for an accounting against other defendants. The court below found that complainant was not such owner, and not entitled to such partition, and therefore the demurrers filed by the Braxton Coal Company and those claiming under that company were sustained. This action of the court determined adversely to the complainant, and in favor of said demurrants, the main contention in this litigation, thereby eliminating them from the controversy, and finally adjudging the legal title to be vested in the Coal & Coke Railway Company. The decree complained of was conclusive and final so far as that branch of the case was involved, but it left undisposed of another matter not directly connected with that contention, severable from it and pertaining to the other defendants whose demurrer had been overruled.

We are of opinion that the decree of the court below completely determined the rights of those defendants whom complainant did not allege to be jointly liable to her with the defendants as to whom the case was retained, and that therefore it is subject to review by this court. It decides the title to the property in controversy, and adjudicates the right to the possession of the same, and the court below only retains the bill for the purpose of ascertaining the condition of the accounts originating in transactions occurring between those who owned the property before the title thereof was vested in the Braxton Coal Company. By the decrees sustaining and overruling the demurrers, and dismissing the bill as to some of the demurrants, every contention raised by complainant was disposed of, except as to the account referred to, and thereby the rights of the parties were ascertained and adjudged. The conclusion we thus reach is sustained by decisions commanding our respect and impelling our observance. Williams v. Morgan, 111 U. S. 684, 4 Sup. Ct. 638, 28 L. Ed. 559; Central Trust Company v. Grant Locomotive Works, 135 U. S. 207, 10 Sup. Ct. 736, 34 L. Ed. 97; Hill v. Railroad Co., 140 U. S. 52, 11 Sup. Ct. 690, 35 L. Ed. 331; Standley et al. v. Roberts et al., 59 Fed. 836, 8 C. C. A. 305; Gunn v. Black et al., 60 Fed. 159, 8 C. C. A. 542; Rust v. Waterworks Co., 70 Fed. 129, 17 C. C. A. 16.

The cases relied upon by the appellees to support their insistence that the decree appealed from is not final are not applicable to the case we now consider, as they relate to controversies in which the defendants whose demurrers were sustained, or who were decreed not to be liable in the controversies involved, were alleged in the bills to be jointly liable to the complainants with those defendants as to whom the cases were retained.

It is set forth in the demurrers that the court had no jurisdiction of this case, for the reason that complainant, a citizen and resident of

the state of Pennsylvania, made defendants to her bill George Gillmor, trustee, and W. W. Jackson, also citizens and residents of that state. The decree of the court below, overruling the demurrer of H. C. Jackson and his associates, indicated that this insistence of the defendants was not well founded. As matter of course that decree is not before this court for review on this appeal. As we see the case made by the bill, both Gillmor, trustee, and W. W. Jackson were formal parties, not having such an interest in the real controversy as required their presence before the court, and therefore their citizenship should not be permitted to oust its jurisdiction. Even should they be classed as necessary parties, it is quite clear that their interests are such as are separable from the rights of those constituting the real litigants, and that such interests cannot be directly affected by a decree which disposes of the controversy between such litigants. It is not essential that formal parties should be before the court, and while it is desirable that necessary parties should be, in order that there may be an end to litigation, nevertheless in the courts of the United States, if such parties do not reside within their jurisdiction, or if by making them parties the courts would be deprived of their jurisdiction, the bill will nevertheless be maintained without them, and a final decree be entered; the rights of the absent parties not being affected by it, but remaining to be determined in such jurisdiction as is proper. Where no relief is sought against persons connected with the subject-matter of the bill, it is not necessary that they be made parties. The jurisdiction of the federal courts will not be permitted to be defeated by either the nonjoinder or the joinder of mere formal parties, and if necessary to sustain such jurisdiction parties who are not indispensable should not be impleaded, and if they are made defendants they should be dismissed. Elmendorf v. Taylor et al., 10 Wheat. 152, 6 L. Ed. 289; Shields et al. v. Barrow, 17 How. 130, 15 L. Ed. 158; Kennedy v. Gibson et al., 8 Wall. 498, 19 L. Ed. 476; French v. Shoemaker, 14 Wall. 314, 20 L. Ed. 852; Williams v. Bankhead, 19 Wall. 571, 22 L. Ed. 184; Kendig v. Dean, 97 U. S. 423, 24 L. Ed. 1061; Walden v. Skinner, 101 U. S. 577, 25 L. Ed. 963; Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514; Bacon v. Rives, 106 U. S. 99, 1 Sup. Ct. 3, 27 L. Ed. 69; Wilson v. Oswego Township, 151 U. S. 56, 14 Sup. Ct. 259, 38 L. Ed. 70; Grove et al. v. Grove et al. (C. C.) 93 Fed. 865; Reese et al. v. Zinn et al. (C. C.) 103 Fed. 97.

It is true that, in cases where parties are indispensable to the rendition of a final decree and are out of its jurisdiction, the court will not proceed without them, but will dismiss the bill; and it is also true that, if such parties are of the same citizenship as the complainant, the court will not have jurisdiction. It is apparent that, in the case made by complainant, a final decree adjudicating the rights of the parties in and to the contracts and the property in controversy can be made, and be entirely consistent with equity and good conscience, without the presence of either Gillmor, trustee, W. W. Jackson, or B. E. Cartwright; hence they are not indispensable parties. No relief is asked against Gillmor, either as trustee or as an individual. He parted with the legal title to the property with the assent of the parties interested in it, and he is only referred to in order to show the na-

ture of the contracts involved and the connection of the parties thereto. W. W. Jackson is not a necessary party, and really has no interest in the controversy made by the bill. He parted with all his rights of every character and description, and the validity of his assignment of the same is not questioned. B. E. Cartwright is not concerned in the contention of complainant with the defendants she brought before the court, and the prayer of the bill asks for no decree against him. The provisions of equity rule No. 47, promulgated by the Supreme Court of the United States, apply in several particulars to the case we now consider. It reads as follows:

"In all cases where it shall appear to the court that persons, who might otherwise be deemed necessary or proper parties to the suit, cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may in their discretion proceed in the cause without making such persons parties; and in such cases the decree shall be without prejudice to the rights of the absent parties."

We reach the conclusion that this ground assigned in the demurrers was not well founded.

There is no merit in the claim that the bill is multifarious, which insistence is founded on the fact that complainant, conceiving herself to be entitled to a certain decree, prays for it, but at the same time asks that, if she be mistaken, then it may be ordered that she may proceed otherwise. She asks for alternative relief, which may be granted in equity if the circumstances as they are disclosed in the litigation justify it. We think the facts as alleged by the complainant authorized the double aspect of her bill, and justified the prayer for alternative relief. Adams, Equity, 309; Beach's Eq. Prac. § 114; Street's Fed. Equity Practice, vol. 1, 143.

We come now to consider whether or not there is equity in the bill, so far as it relates to those defendants whose demurrers thereto were sustained. Said defendants were claiming the property in controversy, as successive vendees under the title of the Braxton Coal Company, and that company was organized by virtue of the contracts of May 5, 1900, and November 17, 1900, to which contracts W. W. Jackson was a party, and by which he agreed that Gillmor, trustee, should convey the property to that company, which conveyance was duly made by said trustee. Afterwards, on the 11th day of April, 1901, W. W. Jackson, for a valuable consideration, granted to H. C. Jackson an option to purchase all the interests he (W. W. Jackson) had under the contracts mentioned, and in this option, which was executed under his hand and seal, and duly acknowledged, he recited the fact that the coal had been sold, and that the title to it had been vested in tthe Braxton Coal Company. This appears from complainant's bill, in which it is also shown that she claims under the option referred to, which had been by H. C. Jackson assigned to her. It is thus made plain that complainant had no other right, title, or interest in any of the property in controversy than such as W. W. Jackson held at the time he gave said option; that he and she were aware that the title to such property had been duly conveyed to the Braxton Coal Company; and

that she was estopped to deny such title. The deed made by Gillmor, trustee, under the direction of W. W. Jackson, of which he had knowledge and in which he acquiesced, was dated prior to the purchase by complainant of the option which gave her the right to share in the profits accruing from that conveyance. She had no right to demand a share of the coal lands so sold, and was not entitled to a partition thereof, and it would be by her own showing contrary to equity and against good morals and conscience to permit her to continue this litigation against the Braxton Coal Company and those claiming title under it.

There remains another matter, relied on by these demurrants, the proper disposition of which compelled the decree appealed from, and will defeat complainant's recovery against the defendants whose demurrers were sustained. That she did not make use of that diligence which the circumstances as alleged by her called for, and that the law applicable thereto required, is beyond question. The facts alleged by her make a prima facie case of inexcusable inactivity, which she has utterly failed to satisfactorily explain. In April, 1901, the option under which she claims was executed by W. W. Jackson, and in June of that year it was assigned to her. She then knew—or she should have known, for it was required of her that she fully advise herself concerning the condition of the property, and of those claiming and in possession of it—that in November, 1900, Gillmor, acting as trustee for W. W. Jackson and others, had sold and conveyed the property in which she claimed an interest, to the Braxton Coal Company; that said company had parted with such title; and that the same had become vested in the Coal & Coke Railway Company. She must have known, for the assignment under which she claimed disclosed it, that W. W. Jackson knew that his trustee had sold and conveyed the property. She was aware that, instead of contesting that sale, he acquiesced in it. It is inconceivable that she was not informed of the subsequent conveyances of the property, and of the efforts then being made to develop the locality where it was situated. She asserted no claim during the years of failure. She offered no aid to those who were struggling to make succcessful the investments in which she now asserts ownership. From June, 1901, to November, 1904, she slept on her rights, if any she had against these defendants, and was awakened only when it was apparent that the Coal & Coke Railway Company had, by the expenditure of large sums of money, vastly increased the value of the property. The conditions surrounding transactions of this character are closely scrutinized in a court of equity, which will not render its aid in procuring an unrighteous result.

The Supreme Court of the United States, in Johnston v. Standard Mining Co., 148 U. S. 360, 371, 13 Sup. Ct. 585, 37 L. Ed. 480, said in a case quite similar to this one:

"Under such circumstances, where property has been developed by the courage and energy and at the expense of the defendants, courts will look with disfavor upon the claims of those who have lain idle while awaiting the results of this development, and will require, not only clear proof of fraud, but prompt assertion of plaintiff's rights."

The same court in Twin Lick Oil Company v. Marbury, 91 U. S. 587, 23 L. Ed. 328, said:

"Property worth thousands to-day is worth nothing to-morrow; and that which would to-day sell for $1,000 at its fair value may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious, of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit."

Also in Patterson v. Hewitt, 195 U. S. 309, 25 Sup. Ct. 35, 49 L. Ed. 211, it is said:

"Indeed, in some cases the diligence required is measured by months rather than by years. Pollard v. Clayton, 1 Kay & Johnson, 462; Atwood v. Small. 6 Clark & Finelly, 232. And in others a delay of two, three, or four years has been held fatal. Twin Lick Oil Co. v. Marbury, 91 U. S. 587 [23 L. Ed. 328]; Hayward v. National Bank. 96 U. S. 611 [24 L. Ed. 855]; Holgate v. Eaton, 116 U. S. 33 [6 Sup. Ct. 224, 29 L. Ed. 538]; Hagerman v. Bates. 5 Colo. App. 391 [38 Pac. 1100]; Graff v. Portland Co., 12 Colo. App. 106 [54 Pac. 854]."

In Mackall v. Casilear, 137 U. S. 556, 566, 11 Sup. Ct. 178, 34 L. Ed. 776, the court said:

"The doctrine of laches is based upon grounds of public policy, which require for the peace of society the discouragement of stale demands."

In Abraham v. Ordway, 158 U. S. 416, 15 Sup. Ct. 894, 39 L. Ed. 1036, it is said:

"Whether equity will interfere in cases of this character must depend upon the special circumstances of each case. Sometimes the courts act in obedience to statutes of limitations; sometimes in analogy to them. But it is now well settled that, independently of any limitation prescribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done, in the particular case, by granting the relief asked. It will, in such cases, decline to extricate the plaintiff from the position in which he has inexcusably placed himself, and leave him to such remedies as he may have in a court of law."

Every case depends on its own circumstances in determining the lapse of time essential to make applicable the doctrine of laches. It will be applied in cases where only a short period of time has elapsed, where the conditions surrounding the property in controversy have changed, especially those relating to its value, and affecting injuriously the interests of innocent defendants. In Holgate v. Eaton, 116 U. S. 33, 6 Sup. Ct. 224, 29 L. Ed. 538. relief was denied although only about two years had elapsed. In Société Fonciere, etc., v. Milliken, 135 U. S. 304, 10 Sup. Ct. 823, 34 L. Ed. 208, the court denied relief where the delay was two years. In Twin Lick Oil Co. v. Marbury, supra, and in Hayward v. National Bank, 96 U. S. 611, 24 L. Ed. 855, the delay in instituting suit was near four years, and under the particular facts of each case, respectively, relief was refused. The cases are many in which courts of equity have refused to entertain bills where the parties have waited for four and five years before attempting to assert their claims, but we deem it unnecessary to refer to them.

We are impelled to the conclusion that the extraordinary increase in the value of the property involved in this suit induced the complainant to assert a claim regarding it, which neither she nor W. W. Jackson had theretofore formulated as against either the Braxton Coal Company or those claiming under it, against none of whom has bad faith, concealment, or fraud been charged. The property, when first optioned, was, because of its inaccessibility, of little value, and, lacking means of transportation, the prospects were that for years to come its coal beds would continue to be undisturbed, and that the locality where they were situated would not feel to any appreciable extent the touch of the demands of commercial activities. The commendable efforts of those who first entered the field and attempted to overcome its natural disadvantages were not crowned with success, and, when they realized that so far as their original plans were concerned failure was inevitable, they provided for the return to them, respectively, of the comparatively small sums they had invested, with only a moderate profit thereon, and relinquished to others, who controlled unlimited capital, the development they had expected to accomplish.

The change wrought by the success of this enterprise—made possible by the construction of the Coal & Coke Railway—has been almost magical in character. The railroad has obliterated the pathways of the mountaineer, mines have been opened where the waste places were, the quietude of the primeval forests has been dispelled by the hum of diversified industries, leaping flames illumine the wilderness, which has yielded its solitude to the habitations of man, and prosperity smiles on the entire locality, where the fates have been so propitious. This wonderful, yet in this wealth-laden land not unusual, transformation, was caused by the combination of brains, energy, and capital, a partnership in which the complainant was not included, a result to which she did not contribute, though now, after its accomplishment, she asserts a claim to the one-fourth part of the values thereby created. The court below did not err in advising her that its decree could not be used in sustaining her contention.

Affirmed.

