JACKSON v. JACKSON et al.

(Circuit Court of Appeals, Fourth Circuit.    May 4, 1915.)

No. 1317.

1. PARTNERSHIP &72—CONTRACTS—RIGHTS AND OBLIGATIONS OF PARTIES.
    A contract between four persons, which recited that each agreed to
furnish an equal amount of money sufficient to option and control a coal
field, and which declared that each should share alike in all the options
taken, executed when they expected that $5,000 would finance the scheme,
which sum was paid by each paying his share, imposed on each to pay
his share of any additional sum necessary to carry out the object; and,
where one of them refused to put up his share of an additional sum, his
associates were not bound by the provision to share alike in all options
taken, and a decree awarding his assignee a share, determined by the
ratio which $1,250 bore to the aggregate sum contributed by all the par-
ties out of the gross profits realized, gave adequate relief.
    [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 117; Dec.
Dig. &72.]

2. PARTNERSHIP &306—CONTRACTS—RIGHTS AND LIABILITIES OF PARTIES.
    H., A., W., and G. entered into a contract stipulating that each would
furnish an equal amount of money sufficient to option and control a coal
field.   Each contributed $1,250, but it developed that a further sum of
$8,000 was needed.   W. refused to pay his share of the $8,000, and his
associates paid the same.   H. subsequently executed an assignment, which
recited that W. was the owner of a fourth undivided interest.   A. and G.
knew nothing of the transfer until long afterwards, and H. was not per-
sonally concerned, for he took the assignment for the sole purpose of
turning it over to the wife of W., which he did on the same day.   Held,
that there was no recognition of the right of W. to share equally in the
profits realized by his associates after his refusal to make his con-
tract contribution.
    [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 706–709;
Dec. Dig. &306.]

3. JUDGMENT &241—SEPARATE JUDGMENTS—ASSIGNEE.
    Where an assignee of one of four partners was entitled to recover
against the remaining three partners, it was not error to direct a separate
judgment against the three.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 426; Dec. Dig.
&241.]

Appeal from the District Court of the United States for the North-
ern District of West Virginia, at Parkersburg; Alston G. Dayton,
Judge.

Suit by Ida G. Jackson against Henry C. Jackson and others.   From
a decree granting insufficient relief, complainant appeals.   Affirmed.

James S. McCluer, of Parkersburg, W. Va. (McCluer & McCluer,
of Parkersburg, W. Va., and William G. Cavett, of Memphis, Tenn.,
on the briefs), for appellant.

W. H. Wolfe and B. M. Ambler, both of Parkersburg, W. Va. (Van
Winkle & Ambler and William Beard, all of Parkersburg, W. Va., on
the briefs), for appellees.

Before KNAPP and WOODS, Circuit Judges, and CONNOR, Dis-
trict Judge.

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KNAPP, Circuit Judge. The opinion of this court on the former appeal (Jackson v. Jackson, 175 Fed. 710, 99 C. C. A. 286) contains a full statement of the facts out of which the litigation arose, and of the issues which were then determined, and a brief summary will suffice for the questions that remain for decision. The basis of the suit is a contract which reads as follows:

"This, the first day of November, 1899, Henry C. Jackson, A. B. White, W. W. Jackson, H. B. Nye and G. A. Newlon enter into the following agreement between themselves; that is to say, that they each agree to furnish an equal amount of money sufficient to option and control the Gilmer County Coal Field, and do hereby appoint G. A. Newlon their lawful agent to manage and direct said business in every respect that he may deem conducive to the interests of the said parties above named.

"That the said Henry C. Jackson, A. B. White, W. W. Jackson, H. B. Nye and G. A. Newlon shall share alike in all the options so taken on said coal in said fields, until such time as the parties hereto may decide to take no more options on said coal."

This contract was executed about the time of its date by all the parties named, except Nye, who for some reason did not go into the venture. It seems to have been expected at the outset that $5,000 would be sufficient to finance the scheme, and accordingly each of the four signers put in $1,250. In the course of the next few months options were obtained on something like 25,000 acres of coal lands, situated in the locality mentioned, and those options were ultimately disposed of at a profit which was at least several times the amount of the original contribution. The principal matters now in dispute are: (1) The amount of net profit actually realized from the operation; and (2) the share of the same to which the plaintiff, who sues as assignee of her husband, W. W. Jackson, is entitled. As the latter question is the more important it will be first considered.

[1] We deem it quite unnecessary to review the great mass of testimony, which extends through more than 300 pages of the printed record, because in our view the question in hand turns upon facts which lie within narrow compass and are wholly undisputed. It was one thing to get options on these coal properties, which were secured for speculative purposes, and quite another thing to dispose of them to advantage before they expired. Much difficulty was experienced, and many complications, arose even in the early stages of the undertaking. Among other things, it was found that other parties, known as "Nease and Associates," had entered the field with the same object in view, and some arrangement had to be made with this hostile group of promoters. Without going into details, it is sufficient to state that by the beginning of May, 1900, the situation became such as to threaten entire failure unless the sum of $8,000 or thereabouts could be provided to keep the enterprise afloat. White, Newlon, and H. C. Jackson were ready to advance their proportion of this amount, but W. W. Jackson declined to make any further contribution. He was asked, and even urged, to come in with his share, but persistently refused to do so, whether from lack of means or confidence is not altogether certain. Upon his election to stay out, the other three put up the needed money, with the result that the total investment was $13,789.85, of which W. W. Jackson contributed $1,250, H. C. Jackson $3,595, White $3,595,

and Newlon $5,349.85. Nor did W. W. Jackson do anything to aid his associates in the long and doubtful struggle which followed, and no credit was due to him for the measure of success which good fortune finally brought. Indeed, his secret dealings with the Braxton Coal Company, which was organized in pursuance of the agreement of May 5, 1900, was clearly adverse to the common interest and inconsistent with his partnership obligations.

Nevertheless, it is insisted that the plaintiff, who on the 11th of April, 1901, succeeded to whatever rights W. W. Jackson then had, should be awarded one-fourth of the realized profits, and this on the theory that the contract of November 1, 1899, created a partnership between the parties thereto, that the capital of this partnership, and its only capital, was the $5,000 originally contributed, and that the subsequent investments by the other members of the firm, when W. W. Jackson refused to go any further, were in legal effect nothing but loans to the partnership, which were of course to be repaid to them, as though borrowed from an outsider, but which did not change the basis for dividing the surplus that remained after paying the debts and expenses.

We are unable to sustain this contention. The partnership in question, to call it such, had no fixed or definite capital. The agreement of the parties was that each of them would furnish "an equal amount of money sufficient to option and control the Gilmer county coal field," and this plainly implied the obligation of each to furnish one-fourth of whatever sum proved necessary to carry out the project. This obligation W. W. Jackson failed to perform. He did not deny, when called upon for his share, that the further sum of $8,000 was needed, nor did he raise any question as to what was to be done with the money. He simply declined to take any risk beyond the $1,250 already invested, and so left the others to the alternative of providing the necessary funds themselves or allowing the whole scheme to go by the board. They had the courage to go on without him, and there is no reasonable doubt that the venture was saved, almost in spite of W. W. Jackson, by the efforts of the other parties and the additional $8,000 which they contributed; and, in our estimation, this $8,000 was just as much "capital" as was the $5,000 put in originally.

[2] Taking all the circumstances into account, it seems plain to us, when W. W. Jackson refused to put up his share of the amount required to avoid disaster, that his associates were no longer bound by the contract provision to "share alike in all the options so taken." Events had developed an entirely new situation, and this refusal on his part operated to recast the prior relations of the parties. Nor are we satisfied that the defendants at any time afterwards recognized the right of W. W. Jackson to share equally with them in the benefits realized by their unaided efforts. Much is sought to be made of a recital in the assignment from him to H. C. Jackson on the 11th of April, 1901, that he "was the owner of a one-fourth undivided interest." But this recital loses its significance when it is remembered that White and Newlon knew nothing of this transfer until long afterwards, and that H. C. Jackson was not personally concerned because he took the assignment for the sole purpose of turning it over to the plaintiff, which he did on the same date.

There is no occasion for extended discussion. As we see the matter it comes to this: The mutual promise in the first contract to furnish an equal amount of the necessary funds for controlling these coal options was the essential condition of the right to an equal share of the expected gains, and when one of the parties failed to meet this condition, the others were absolved from the corresponding obligation. In other words, the contract upon which the plaintiff bases her claim was broken by the failure of her husband to bear his share of the financial burden, and she therefore cannot recover what it would be inequitable for him to receive. The court below held that her just share was determined by the ratio which $1,250, the sum contributed by W. W. Jackson, bears to $13,789.85, the aggregate sum contributed by all the parties, and we are of opinion without further comment that she is not entitled to a more favorable division.

It was found by the special master, and his finding has been confirmed by the trial court, that the gross profit realized was $48,353.48, but the plaintiff asserts that it was $11,000 more, or a total of $59,-353.48. The difference between these two amounts is the profit resulting from the purchase and sale of the so-called Maxwell land. Concerning this transaction the special master reported as follows:

"The master finds from the evidence that W. W. Jackson or Ida G. Jackson is not entitled to participate in any profits paid to the owners of the fee of the Maxwell land. The evidence is clear that A. B. White and others (W. W. Jackson not included) bought this land outright and sold it outright to the purchasers of the coal options, and are entitled to whatever profits there may have been in the deal without accounting to W. W. Jackson for any part of the same. The evidence further shows that the coal underlying this land was included in the sale of the other coal options, and that A. B. White and others (W. W. Jackson not included) got their share of the profit from the coal, and such profit is included in the amount of gross profits determined above."

It would serve no useful purpose to review the evidence and argument respecting this disputed item. We are satisfied after careful examination that the conclusion of the special master is supported by adequate testimony. There is certainly no such preponderance of opposing proof as to justify us in setting aside a finding which has been passed upon and approved by the court below. It is sufficient to say that in our judgment this $11,000 was rightly excluded from the sum in which the plaintiff is entitled to share.

The same may be said of the claim that the net profit has been improperly reduced by the allowance of certain expenses which were not sufficiently proved. The special master has fully explained his reasons for crediting the account with these expenses, and we see no occasion for disturbing his findings in that regard.

[3] The plea that it was error to direct separate judgments against the defendants, instead of a joint judgment against all of them, must be rejected. There is no support for the contention that the refusal to give plaintiff one-fourth of the profit amounted to a misappropriation or conversion by the defendants of the balance remaining in their hands after the expenses were paid. They offered to return the sum which her husband originally contributed, and denied that he was entitled to anything more. Treating the parties as holding a partnership

relation, which is the plaintiff's theory, we see no reason for not applying the ordinary partnership rule, which supports a separate judgment against the several partners in such cases.

We are of opinion that the record discloses no reversible error, and the decree appealed from will therefore be affirmed.