## QUIRK *v.* LIEBERT.

MARRIED WOMEN; DISABILITIES; TRUSTEES; LACHES.

1. Where, at the time of their marriage a man and woman are joint owners of real estate, the woman occupies the position of *feme sole* with respect of her interest in the property, within the meaning of the act of Congress of April 10, 1869, Ch. 23, known as the Married Woman's Act, and is under no disability during her husband's lifetime to maintain a suit respecting her interest in such property.
2. The purchase by the trustee under a deed of trust of the trust property for his own benefit is not absolutely void, but voidable only, and it may be confirmed by the parties interested, either directly or by long acquiescence with knowledge of the facts.
3. A decree dismissing a bill in equity to set aside a sale under a deed of trust upon the ground that the trustee under the deed of trust indirectly became the purchaser for his own benefit, and also to set aside duly recorded mesne conveyances, which bill was filed thirteen years after the sale and after the property had greatly enhanced in value and had been greatly improved, *affirmed*, because of the *laches* of the complainant.

No. 705.　Submitted January 12, 1898.　Decided March 9, 1898.

HEARING on an appeal by the complainant from a decree dismissing a bill to set aside a deed of trust sale and certain deeds of conveyance. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Newton & Gillett* and *Mr. F. J. Lavender* for the appellant.

*Mr. D. S. Mackall* and *Mr. J. A. Maedel* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The original bill in this case was filed on October 24, 1896, (and subsequently amended in a not very material particular), by the appellant against the appellee Liebert,

and twelve other defendants, two of whom are infants, and several of them reside beyond this jurisdiction. The object of the bill was to have several deeds of conveyance declared void, and sales made thereunder vacated, upon the alleged ground of the violation of trusts, and the existence of fraud in the transactions under the deeds, and in the sale of the property conveyed to the appellee Liebert, the present owner thereof.

There had been a preceding bill filed by the appellant against some of the present defendants, in respect of the same transactions, on the 30th of October, 1895; but, upon demurrer to that bill, it was dismissed, without prejudice, on June 10, 1896. And thereupon, on the 24th of October, 1896, the present bill was filed. To the present bill the appellee Liebert interposed a demurrer, principally upon the ground of the want of equity in the bill, and the *laches* of the appellant, and the great lapse of time that had been allowed to intervene between the transactions complained of and the time of filing the bill. The demurrer was sustained, and the bill was dismissed, as to the present appellee Liebert.

Upon the argument of the appeal, we were inclined to the opinion that a proper disposition of the case would be a reversal of the order sustaining the demurrer and dismissing the bill, and require the appellee to answer the matters alleged. But upon more critical examination of the matters alleged in the bill, and due reflection thereon, we have concluded that it would be an encouragement to *laches* of complainants, and suits upon stale claims, to require the defendants to go into the facts of this case, already greatly obscured by time to the defendants, and in regard to which many of the defendants can have no knowledge whatever, other than the knowledge that they may derive from the public records.

It appears from the allegations of the bill that the appellant and Patrick Quirk were married in January, 1874, and

that prior thereto, and at the time of their marriage, they were joint tenants or joint owners of certain real estate, situate in the city of Washington, the subject of the present litigation. That subsequently to the marriage, that is to say, on the 1st of February, 1882, the appellant and her husband conveyed the property, by deed of trust, with usual power of sale, to William W. and Washington Danenhower, as trustees, to secure what is recited in the deed as the joint debt of husband and wife. It is alleged that a note was given for the debt of $800, dated February 1, 1882, payable to Ellen Eddie, three years after date, with interest at 7 per cent. per annum; and also twelve notes of $14 each for the quarterly interest on the principal of the debt; it being provided in the deed of trust that, "upon any and every such default or failure being made in payment as aforesaid (of any of said notes or any proper interest, costs, and charges thereon), at the request, in writing, of the said Mrs. Ellen Eddie or the legal holder of said notes," the said trustees should proceed to sell and dispose of the said premises, etc. That default having been made in the payment of the interest notes as they became due, the property was duly advertised for sale, by notice published in the Washington Star, for the requisite time, and that the property was put up at public auction and sold to the highest bidder, and that bidder was a man by the name of Howard, but he failed to comply with the terms of sale; and thereupon the property was again duly advertised and resold at public sale on the 30th day of November, 1883, to Joseph B. Bryan. That on the 8th day of December, 1883, the trustees, Washington and William W. Danenhower, for the recited consideration of $970, conveyed the property sold to the purchaser Bryan; and that, on the same day, Bryan conveyed the property purchased by him to William W. Danenhower, one of the trustees in the original deed of trust, for the recited consideration of $1,000; and that Danenhower, the grantee in the last mentioned deed, con-

veyed the property to William W. Bryan and Washington Danenhower, in trust to secure the payment of a note of $800, made by William W. Danenhower, payable to Joseph B. Bryan, one year after date. This deed of trust, according to the allegation of the bill, has been released. It is further alleged that on the 1st day of May, 1884, said William W. Danenhower, for the recited consideration of $1,200, conveyed the property to the appellee, William W. Liebert, who is the present owner, and has been in possession thereof since 1884.

It is distinctly alleged in the bill, that all these various deeds and deeds of trust, reciting the transactions as they occurred, were duly spread upon the public records of this District—some of them on the very day that they were made, and the others within a few days after their date—and, of course, the records of these deeds furnished full notice to everybody interested in the transactions to which they refer.

The bill shows that Patrick Quirk, the husband of the appellant, died in May, 1894, leaving a will, by which the appellant was made general residuary devisee; and in the same year and month William W. Danenhower, one of the original trustees in the deed of trust of 1882, and through whom, by subsequent conveyances, the title to the property passed to the appellee, died, leaving a will. During the lives of these two principal parties to the transactions now complained of, no question was ever made or suggested as to the validity of what had occurred under the deed of trust of February 1, 1882. No one has ever alleged or suggested that Patrick Quirk did not have full knowledge of everything that was done under the deed of trust.

It is not pretended that the debt for which the original deed of trust was given was ever paid, except from the proceeds of the sale of the property, under the deed of trust; nor is it pretended by the complainant that either she or her husband ever paid or offered to pay the taxes on the property, after the trustees' sale of November 30, 1883. By

most inconsistent allegations, the complainant alleges in one part of her bill, that, from the time of her marriage until the time of her husband's death, she placed full reliance in him, and allowed him to have complete charge of her estate, and that he paid for the complainant the interest on the note or notes which were secured by the deed of trust. But in another paragraph of the bill she alleges, as an excuse for her delay and inaction in asserting her rights, that at the time of making the sale by the trustees, and the other transactions referred to, she was a *feme covert*, and remained so until the death of Patrick Quirk in 1894; and "that her said husband, at the time of all the aforesaid transactions, was a constant drinker of spirituous liquor and was generally drunk and intoxicated."

The fact that the complainant was a *feme covert*, as she alleges, constituted no disability to her taking all necessary legal steps to vindicate her rights, whatever they were, in the property conveyed. She held the property, though jointly with her husband, under the Married Woman's Act of the 10th of April, 1869, Ch. 23. By that act, a married woman may convey, etc., her property, or any interest therein, and in the same manner and with like effect as if she were unmarried, and any married woman may contract, and sue and be sued in her own name, in all matters having relation to her sole and separate property, in the same manner as if she were unmarried. The terms, "her sole and separate property," mean simply the property of the wife in which the husband has no marital rights. In regard to the property of the wife, held under this statute, she holds it as if she were *feme sole*. Secs. 728, 729, R. S. D. C.

The property when sold by the trustees was unimproved and of small value, but it has since been improved by the appellee, and by the improvement it has been greatly enhanced in value. The improvements were placed on the property without any warning or notice whatever to the appellee of any adverse claim by either the husband or the

complainant, though they both had full knowledge of the fact that such improvements were being made on the property. In regard to this matter of the improvements, the complainant alleges in her bill "that when, in 1893, according to her best recollection, she saw improvements being made on the said lots 65 to 72, she asked her husband for an explanation of others erecting buildings on her property, she was told to let them go ahead; that they were being erected by Liebert, who was an uncle of the said Washington Danenhower; that her husband had frequently boasted to her that he would yet own a block of houses, and that she supposed that said houses were being erected through some arrangement of his." If there be truth in this allegation, it shows very clearly with what fraudulent designs the complainant and her husband remained silent when conscience and good faith required them to speak out, and to assert their claim, if any claim they really had, to the property. There is no proffer of compensation for the improvements, nor of reimbursement of the purchase money.

The complainant prays that the deed of trust made by herself and husband, and under which the property was sold, may be declared void both in law and equity, as to her joint interest in the property conveyed; and that the deed from the trustees to Joseph B. Bryan, and the deed from the latter to William W. Danenhower, and that from William W. Danenhower to the appellee Liebert, may all be declared void and of no effect, though Joseph B. Bryan is not made a party defendant in the case.

The main grounds put forth, as we have seen, for all this vacation of deeds and setting aside of titles, after the lapse of nearly thirteen years from the time the trustees' sale was made, and between two and three years after the deaths of two of the principal actors in the transactions involved, are two; first, that the complainant was *feme covert,* and was therefore under some sort of disability to act during the lifetime of her husband; and, second, that one of the trustees

making the sale, and who has since died, became indirectly the purchaser of the property at the trustees' sale.

The bill in this case contains a good many allegations that are of no special significance; and there is a signal absence of material allegations. To invoke the active powers of a court of equity, in a case like the present, the party applying should set forth in her bill, specifically, what were the impediments to an earlier prosecution of her claim; how she came to be so long ignorant of her rights, if she was in fact ignorant of them, and the means used by the defendants to fraudulently deceive and keep her in ignorance, and how and when she first came to a knowledge of her rights, so that the court may determine whether the party has made application within a reasonable time and is free from the objection of *laches*. *Badger* v. *Badger*, 2 Wall. 87, 95. The present bill is greatly deficient in most of these requirements. As justification for the delay in bringing her suit, the fact that she was a *feme covert* from the time the deed of trust was made until May, 1894, can not be invoked successfully. With respect to her rights in the property conveyed to the trustees, she occupied the position of a *feme sole*, and must be subject to all the defences to her suit that a *feme sole* would be liable to under a similar state of case. *Kieley* v. *McGlynn* (case Broderick's will), 21 Wall. 519; *Warner* v. *Jackson*, 7 App. D. C. 211, 217. And being so bound to use diligence and to avoid delay, she has not shown why she did not avail herself of the means of knowledge that was of public record, and open to everyone, and of which everyone, including herself, was bound to take notice. Nor has she shown that there were means of any kind adopted by the defendants, or those represented by them, by which she was misled, deceived or kept in ignorance of the transactions that had occurred, and of which she now complains. On the contrary, all the allegations of the bill point, with unmistakable certainty, to the fact that she was not ignorant of the sale of the property, nor of the fact that it had been

conveyed by the trustees. Indeed, with the means of information at hand, it required but slight diligence and inquiry to obtain full information upon the subject. If Patrick Quirk, the deceased husband, were living, it is clear he would be charged with and held bound by all such notice as the records conveyed to him; and there is no reason why the complainant should be in any different or better position in respect to such means of notice.

In the case of *Foster* v. *Railroad Co.*, 146 U. S. 88, the bill was filed to set aside a foreclosure sale of a railroad under a mortgage, on the ground of fraud and collusion in the making of the sale; but the bill was not filed until about ten years after the sale. And upon demurer to the bill, it was held, that the lapse of time gave rise to the presumption of *laches*, which it was incumbent upon the plaintiff to rebut; and inasmuch as there were no sufficient facts alleged to rebut the presumption, the bill was dismissed, with costs. It was very truly said by the court in that case, that "the defence of want of knowledge on the part of one charged with *laches* is one easily made, easy to prove by his own oath, and hard to disprove; and hence the tendency of courts in recent years has been to hold the plaintiff to a rigid compliance with the law which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts."

It is true, each case must be governed by its own peculiar circumstances, and in the case before us, we can entertain no doubt that the appellant either had actual knowledge or actual notice of such facts and circumstances, as by the exercise of due diligence would have led her to a full knowledge of her rights, and if this were not so, then her ignorance was the result of such gross and inexcusable negligence that she would be equally bound. *Simmons Creek Coal Co.* v. *Doran*, 142 U. S. 417, 439, 440.

It is well settled by a great number of cases of the highest

authority, that *laches* does not, like limitations, grow out of the mere lapse of time; but it is founded upon the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties—such as we have in the case before us. *Galliher* v. *Cadwell*, 145 U. S. 368.

In the case just cited, the question of *laches* and when it applies, is fully examined, and the result of many of the cases is stated. In that case, the general doctrine is clearly stated in the following passage from the opinion of the court, by Mr. Justice Brown, at pages 371, 372 of the report:

"The question of *laches* turns not simply upon the number of years which have elapsed between the accruing of her rights, whatever they were, and her assertion of them, but also upon the nature and evidence of those rights, the changes in value, and other circumstances occurring during that lapse of years. The cases are many in which this defense has been invoked and considered. It is true, that by reason of their differences of fact no one case becomes an exact precedent for another, yet a uniform principle pervades them all. They proceed on the assumption that the party to whom *laches* is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the change in condition or relations during the period of delay, it would be an injustice to the latter to permit him (the former party) to now assert them."

In this opinion several preceding cases in the Supreme Court are referred to, and among others the cases of *Holgate* v. *Eaton*, 116 U. S. 33, and *Davison* v. *Davis*, 125 U. S. 90. In *Holgate* v. *Eaton*, a married woman who, on being informed of a contract made by her husband for the sale of an equitable interest in real estate held by her in her own right,

repudiated it, and refused for two years to perform it, was not permitted thereafter to maintain a bill for specific performance of the contract, the value of the property, in the meantime, having depreciated. And so in the case of *Davison* v. *Davis*, a bill to compel the specific performance of a contract to sell personal property upon the payment of a promissory note, payable at a date after the making of the contract, was dismissed on the ground of the *laches* of the complainant, in waiting five years after the maturity of the note before filing his bill, the property in the meanwhile having increased in value.

With respect to the question, attempted to be made by the allegations of the bill, of the invalidity of the purchase of the trust property by one of the trustees at his own sale, there is nothing shown to relieve the case of the gross *laches* of the complainant. This question is fully met and disposed of by what is said by the Supreme Court in the case of *Hammond* v. *Hopkins*, 143 U. S. 224, 252. In that case it was held that a purchase by a trustee of trust property, for his own benefit, is not absolutely void, but voidable only; and it may be confirmed by the parties interested, either directly or by long acquiescence with knowledge of the facts. But with respect to the diligence required, in order effectually to impeach the sale, the court said: "It is conceded that the proposition that where a trustee or person, acting for others, sells the trust estate and becomes himself interested in the purchase, the *cestuis que trust* are entitled as of course to have the purchase set aside, is subject to the qualification that the application for such relief must be made *within a reasonable time,* and that *laches* and long acquiescence can not be excused except by showing some actual hindrance or impediment caused by the fraud or concealment of the party in possession, which will appeal to the conscience or the chancellor." As we have shown, there was no such hindrance or impediment, caused by the fraud or concealment of the party in possession

in this case, to the right of complainant to make application within a reasonable time to the proper forum for relief.

Upon full examination of the case as stated in the bill, we find no error in the order of the court below, sustaining the demurrer and dismissing the bill as to the defendant Liebert, the appellee on this appeal, and said order must therefore be affirmed; and it is so ordered.

*Order affirmed.*