## SUMMIT COAL CO. v. SOUTHERN COTTON OIL CO.

Circuit Court of Appeals, Fifth Circuit.
February 6, 1928.

No. 5024.

1. Evidence ⊙�center➔397(1)—Rights of parties to contract evidenced by written instruments are determined solely by the writings.

Where contract or contracts between parties are evidenced by written instruments, those instruments alone are to be considered in determining mutual rights and obligations.

2. Mortgages ⊙➔415(1)—Oil company's right to foreclose mortgage of coal company defaulting in payment of installments held not contingent on oil company's compliance with subsequent contract between same parties looking to purchase of coal.

Right of oil company to foreclose mortgage on coal company's property on account of default in payment of installments *held* not contingent on oil company's· compliance with contract subsequently entered into between parties looking to purchase and sale of coal and evidenced by separate instrument, where mortgagee's right was not made contingent on making offer to purchase coal, since in absence of· such agreement mortgagor's promise to pay and mortgagee's promise under separate contract to offer to purchase coal were not dependent covenants.

3. Courts ⊙➔347(3)—Demand for damages for breach of contract held not available as counterclaim in foreclosure suit, because not equitable claim (equity rule 30).

Demand for damages for breach of contract asserted in bill to foreclose mortgage *held* purely legal demand, which could not be made the subject of counterclaim under equity rule 30, providing ·answer may state any counterclaim arising out of the subject of the suit, since .rule applies only to equitable claims.

Appeal from the District Court of the United States for the Northern District of Alabama; William I. Grubb and Henry D. Clayton, Judges.

Suit by the Southern Cotton Oil Company against the Summit Coal Company, in which .defendant asserted a counterclaim. Decree for plaintiff, and defendant appeals. Affirmed.

Frank Dominick and A. G. Smith, both of Birmingham, Ala. (Stokely, Scrivner, Dominick & Smith, of Birmingham, Ala., and Ball & Ball, of Montgomery, Ala., on the brief), for appellant.

Leon Weil and R. E. Steiner, Jr., both of Montgomery, Ala. (Steiner, Crum & Weil, of Montgomery, Ala., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. While all the capital stock of the appellant, Summit Coal Company, a corporation which owned certain coal-mining properties, was owned by the appellee, and when the appellant was indebted to appellee in the principal sum of $136,000, the appellee sold all that stock to D. T. Buell, and thereupon, on February 5, 1921, the appellant executed to appellee a mortgage of said properties to ·secure said debt, which was ·divided into installments, payable, respectively, on the 1st day of each month from July, 1921, to November, 1935, each installment to include interest from November 1, 1920. That mortgage contained the following:

"That if said Summit Coal Company should pay said indebtedness as the same matures, and keep and perform all the agreements and undertakings herein contained, then this conveyance to be null and void; but should the Summit Coal Company fail to ·faithfully and promptly do and perform each and all of said agreements and undertakings herein contained, or should default be made in the payment of any sum herein described, or secured, with interest at maturity, and should said default continue for a period of 30 days after notice is mailed to said Summit Coal Company, then in any one of said events, the whole of said indebtedness shall at once .become due and payable, and this mortgage be subject to foreclosure as now provided by law in case of past-due mortgages."

The mortgage contained a provision as to appellant shipping to appellee, until said indebtedness has been paid in full, all steam coal produced from the mines operated by appellant, up to a stated number of tons per year, and as to the appellant accepting and paying·for such coal. By a written agreement, made and dated June 20, 1922, each of the parties released the other from the last-mentioned provision of the mortgage. By a written instrument bearing the same date, June 20, 1922, which recited the cancellation of the last above mentioned provision of the mortgage, the parties agreed as follows:

· ."First. That during the month of May of each year, during the life of the mortgage on the Summit Coal Company property dated February 5, 1921, the Oil Company will offer to buy from the Coal Company its requirements and those of the Refuge Cotton Oil Company (not to exceed, however, 50,-000 tons in any one year) of steam coal for the succeeding 12 months for the plants of the said two companies located in the states of Alabama, Mississippi, Georgia, Florida,

Louisiana, Tennessee, and Arkansas, at such per ton as the Oil Company may fix for the same.

"Second. If the Coal Company does not see fit to accept the price offered by the Oil Company, the Oil Company shall have the right to purchase coal from other parties and not purchase and/or use Summit coal during such year.

"Third. The Coal Company hereby agrees to reserve for the Oil Company 50,000 tons of steam coal in each year, and until the offer referred to in clause or article 'First' hereof has been made by the Oil Company, and the Oil Company hereby agrees to refrain from purchasing its annual requirements up to 50,000 tons of said steam coal in each year until it has made its said offer and same has been refused by the Coal Company.

"Fourth. All offers shall be made by the Oil Company in writing and mailed or delivered to the Coal Company, addressed to Summit, Alabama; all acceptances of such offers shall likewise be in writing and mailed or delivered to the Oil Company, addressed to Southern Cotton Oil Company, Savannah, Ga.; unless within 10 days after the mailing or delivery of such offers the Oil Company shall receive the acceptance thereof by the Coal Company, such offer shall be considered as not having been accepted by the Coal Company and the Oil Company shall have the right of purchasing coal from other concerns, as provided in clause or article 'Second' hereof.

"Fifth. Inasmuch as there may be periods during the year when it may become necessary to store on the stock pile for the Oil Company, it is understood that if the price offered to be paid by the Oil Company is accepted by the Coal Company, the Coal Company shall have the privilege of storing for account of the Oil Company not exceeding ten thousand tons (10,000 tons) of coal, unless a larger quantity is mutually agreed upon, and the Oil Company shall pay the agreed price for that year for said coal.

"Sixth. It is understood that the Summit Coal Company shall have the right to dispose of any coal mined by it that is not covered by contract with the Southern Cotton Oil Company."

The appellant failed to pay the installment due on March 1, 1924, and all subsequent installments, including the one payable December 1, 1925. After that default had continued for a period of more than 30 days after notice thereof was mailed by appellee to appellant, the appellee, in January, 1926, filed the bill in this case for

the foreclosure of the mortgage. Based on the alleged continued failure and refusal of the appellee, from and including May, 1924, to comply with the last above set out agreement to offer to buy or to buy coal from the appellant, the appellant set up as defenses to the bill to foreclose: (1) That in the absence of compliance by appellee with its obligation under that agreement it was not entitled to a foreclosure of the mortgage; and (2) that appellant was entitled to set off against the alleged balance owing on the mortgage debt the alleged amount of damages sustained by the appellant in consequence of appellee's breach of said agreement. The court ruled against those defenses. [1, 2] The contract or contracts between the parties being evidenced by written instruments, those instruments alone are to be looked to in determining the rights and obligations of the parties. Nothing contained in the mortgage, as it was changed by the agreement of the parties, or in the subsequent agreement between the mortgagor and the mortgagee indicated an intention to make appellant's obligation to pay an installment or installments when payable, or appellee's right to foreclose after a default of the appellant and the giving of the required notice, dependent on appellee's compliance with its promise contained in the agreement of June 20, 1922. In no way was compliance by appellant with its agreement to make an offer in May, 1924, made a condition precedent to the existence or exercise of appellee's right, plainly given by mortgage, to foreclose because of appellant's continued failure to pay an installment payable March 1, 1924, and all subsequent installments. The appellant's agreement to pay the stipulated installments at the stated times was absolute and not on condition that appellee comply with its promise contained in an agreement evidenced by a separate instrument. This being so, appellant's agreement to pay and appellee's promise to make an offer to buy coal were not dependent covenants, with the result of depriving the appellee of the right to foreclose in the contingency stated in the mortgage, if the appellant breached its agreement contained in the separate instrument. Loud v. Pomona Land & Water Co., 153 U. S. 564, 579, 14 S. Ct. 928, 38 L. Ed. 822; McLemore v. Mabson, 20 Ala. 137; Clark v. Davis, 32 N. J. Eq. 530, 534; Wiltsie on Mortgage Foreclosure (3d Ed.) § 464. Under the terms of the mortgage, appellee was entitled to a foreclosure when the bill was filed, and was not deprived of that right as a result of its noncompliance with the agree-

ment expressed in the subsequently executed instrument. It follows that the court did not err in ruling against the above first mentioned defense.

[3] The counterclaim sought to be set up as a defense to the bill to foreclose was a purely legal demand for a breach of a contract. The provision of equity rule 30, that the answer may state any counterclaim arising out of the subject-matter of the suit, applies only to equitable, not to legal, claims. American Mills Co. v. American Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306. Furthermore, even if appellant had been entitled to set up in defense to the bill the counterclaim relied on, it seems that it would not have been prejudiced by the rejection of that defense, because the agreement of June 20, 1922, did not obligate it to do anything unless it chose to accept an offer made by appellee to buy coal, the coming into existence of any enforceable contract of sale and purchase being dependent upon the mere will or wish of the appellant. North German Lloyd v. Mexican Petroleum Corporation, 24 F. (2d) 46 (U. S. Circuit Court of Appeals, Fifth Circuit, present term).

We conclude that the record shows no reversible error. The decree is affirmed.