J. P. NORRIS and ELLA NORRIS, his wife, *Appellants*, vs. JONAS EIKENBERRY, JAMES LEE TINCHENOR, ERNEST S. HAMLYN, and ROBERT CRAWFORD, doing business as the Crawford Realty Company, *Appellees*.

137 So. 128.

En Banc.

Opinion filed October 16, 1931.

106

*Roland W. Granat,* for Appellants;
*Seymour, Jones, & Wood,* for Appellees.

DAVIS, Commissioner:—This is a case in which vendors as complainants, seek to foreclose a contract for the sale of real estate. However, the bill of complaint alleges:

"That on account of defendant's failure and refusal to pay the amount due complainants or to otherwise

comply with the terms and conditions of said agreement on his part to be performed, your complainants have exercised their option to declare said contract forfeited as provided for in said written agreement.''

The provision referred to in the quoted allegation reads as follows:

''And in case of failure of the said party of the second part to make either of the payments or any part thereof, or to perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of the party of the first part, be forfeited and terminated, and the party of the second part shall forfeit all payments made by him on this contract; and such payment shall be retained by the said party of the first part in full satisfaction and liquidation of all damages by it sustained, and said party of the first part shall have the right to reenter and take possession of the premises aforesaid without being liable to any action therefor.''

Time of payment is also made an essential part of the contract.

It is a self-evident fact that the contract cannot be further enforced if it was terminated prior to the filing of the bill of complaint.

The effect of a proper declaration of forfeiture of a contract is to nullify the agreement, and the parties may act as if it had not existed. 29 Am. & Eng. Ency. Law (2d Ed.) 684.

Allegations of the bill to the effect that the complainants have been at all times since the execution of the contract, and are now, willing, able and ready to perform on their part are neutralized by the allegation that complainants had exercised their option to declare the contract forfeited, and this renders the bill bad. Murrell v. Peterson, 57 Fla. 480, 486, 49 So. 31.

Under the bill as framed, the complainants are not entitled to the relief prayed.

But it has been suggested here that under the rule stated in Forssell v. Carter, 65 Fla. 512, 62 So. 926, and Realty

Securities Corp. v. Johnson, 93 Fla. 46, 111 So. 532, to the effect that where a contract for the sale of land contains a provision that the contract may be forfeited *at the option of the vendor,* when the terms of payment are not observed in the time agreed on, the vendor must give reasonable notice to the vendee of his intention to insist on payment as provided in the contract or to declare a forfeiture, and since the bill does not allege that the required notice was given, there is nothing here to show that the option to declare a forefeiture was duly exercised.

In Snead v. Wood, 24 Ga. App. 210, 100 S. E. 714, an option for the purchase of real estate was involved and the controlling question was whether the option could be exercised by the optionee or his assignee by the mere giving of a timely notice to the optioner that he had elected to purchase the property. The Court in disposing of the question said :

"The 'exercise' of an option to purchase is merely the election of the optionee to purchase. The elements of an act commonly called 'exercising the option' are : First, the decision of the optionee to purchase the property under the terms of the option; and, second, the communication of this decision to the optioner within the life of the option."

So, in the exercise by the vendor of an option to forfeit or terminate a contract for the sale of real estate, there must be a decision to that effect on the part of the optionee, and a communication of such decision to the vendee. The complainant having alleged in the past tense that he had exercised his option to declare the contract forfeited, the allegations mean not merely that he had decided in his own mind to hold the vendee to a forfeiture of the contract, but that he had also given to the vendee notice of such intention. It is our opinion, and we so hold, that, construing the pleading most strongly against the pleader, when complainants alleged that they "have exercised their option to declare said contract forfeited as provided for in said

written agreement," the language used is broad enough to cover both the intention of vendor to declare a forfeiture and a communication of that intention to the vendee. Champagne v. Black, 121 La. 193, 195, 46 So. 207.

The bill as framed fails to state a case entitling the complainant to the relief prayed.

However, the defendants did not demur to, but answered, the bill and in their answer prayed for affirmative relief.

The appeal is from an order sustaining exceptions to, and also granting a motion to strike, certain portions of the answer which sought to set up an alleged counterclaim, and in the briefs filed no point is made on the sufficiency of the bill.

Unless the matter to which exception was taken or which is embraced in the motion to strike sets up in sufficient terms a counterclaim that comes within the provision of Section 4906, Compiled General Laws of Florida, 1927, Chapter 6907, Acts of 1915, the order should be reversed because the bill appears to be without equity.

"The answer must state, in short and simple form, any counter-claim arising out of the transaction on which is the subject matter of the suit, and may, without cross-bill, set out any set-off or counter-claim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counter-claim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final judgment in the same suit both on the original and cross-claims." Sec. 4906, Compiled General Laws of Florida, 1927.

This Section closely follows the language of Rule 30 of the New Equity Rules of 1912, adopted by the Supreme Court of the United States.

It has been held that an answer seeking affirmative relief by the New Equity Rules occupies the position of a cross-bill under the old practice. Kishi v. Humble Oil & Refining Co., 298 Fed. (5th Cir.) 218. See American Mills

Co. v. American Surety Co., 260 U. S. 360, 67 L. Ed. 306, 43 S. Ct. 149. See also, Electric Boat Co. v. Lake Torpedo B. Co., 215 Fed. 377; Terry Steam Fur. Co. v. B. F. Sturdevant Co., 204 Fed. 103; Adamson v. Shaler, 208 Fed. 566, 567. And that rule 30 does away with cross-bills, Hopkins Fed. Equity Rules, 7th Ed. 209. See cases supra.

This Court has held, however, that Chapter 6907, Acts 1915, does not forbid the use of cross-bills in proper cases, though the statute expressly provides for obtaining affirmative relief upon answers in classes of cases stated in the act. Bryne Realty Co. v. South Florida Farms Co., 81 Fla. 805, 89 So. 318; Hendricks v. Stark, 99 Fla. 277, 126 So. 293.

Where a counterclaim is set up in the answer it ''shall have the same effect as a cross-suit, so as to enable the court to pronounce a final judgment in the same suit both on the original and cross-claims.'' Section 4906. C. G. L. of Florida, 1927.

The answer cannot be regarded as a cross-bill, because it does not (a) set out the purport of the original bill, (b) it does not name any parties defendant thereto and (c) it does not contain a prayer for process. Lovett v. Lovett, 93 Fla. 611, 636, 112 So. 768.

In a sense a cross-demand is an independent proceeding against the plaintiff, and in pleading it the defendant must set forth all the elements of a good cause of action; that is to say, it must contain the same averments which would make it a good complaint if the claim sought to be counterdemanded were a suit brought thereon in the first instance. 23 Standard Ency. Proc. 786.

Prior to the adoption of Chapter 6907, Laws of 1915, it was held here that where the cross-bill set up additional facts, relating to the subject-matter, not alleged in the original bill, and prayed for affirmative relief against the plaintiff in the original bill, the dismissal of the original bill did not dispose of the cross-bill, but it remained for disposi-

tion in the same manner as if it had been an original bill. Ballard v. Kennedy, 34 Fla. 483, 16 So. 327.

Foster's Fed. Pract., (6th Ed.) Vol. 2, pp. 1152-3, is authority for the statement that

"Later authorities held that where the cross-bill was not purely defensive, but sought original relief and contained in itself sufficient allegations for an original bill, it might not be affected by such a dismissal, and that where there was no jurisdiction in equity of the matter set up by the original bill, the filing of a cross-bill alleging matters of equitable cognizance gave the court jurisdiction of the original bill as well, at least where the cross-bill might have been sustained as an original bill."

See also Sunflower Oil Co. v. Wilson, 142 U. S. 313, 35 L. Ed. 1025, 12 S. Ct. 235; Holgate v. Eaton, 116 U. S. 33, 29 L. Ed. 538, 6 S. Ct. 224; Columbus v. Mercantile Tr. Co., 218 U. S. 645, 54 L. Ed. 1193, 1199, 31 S. Ct. 105; Rose's Fed. Jur. & Proc. (3d Ed.) 488.

In Byrne Realty Co. v. South Florida Farms Co., supra, this Court said:

"A cross-bill is demurrable where it does not contain the allegations necessary to show that the cross complainant is entitled to relief, where it is uncertain and indefinite in its allegations as to those matters on which counter relief is sought, or where, seeking relief which is of an equitable nature, it does not contain all the proper allegations which confer an equitable title to such relief."

The sufficiency of an answer is tested by exceptions or by motion to strike. Miami Hdw. etc. Co. v. Magic City Bldg. Co., 96 Fla. 32, 117 So. 704; Fort Myers Development Corp. v. J. W. McWilliams Co., 97 Fla. 788, 122 So. 264. And, by a recent statute, also by demurrer. See Chapt. 13660, Laws of 1929, p. 258.

Since a defendant may now set up in an answer the same matter that formerly could be set up in a cross-bill and the effect will be the same, it follows that if the answer herein, which prays for affirmative relief, contains in itself

sufficient allegations of matters of equitable cognizance, it will not be affected by the fact that the original bill should be dismissed.

The parts of the answer that are affected by the order appealed from allege that the defendants

"deny that the complainants are able and ready to carry out the terms of the said agreement and deny that the defendants have refused to comply with the said contract, and still fail and refuse so to do, but on the contrary, the respondents allege that they are ready, willing and able to carry out the terms of the contract, provided the complainants are able and ready to do likewise;"

That defendants

"prior to the execution of the aforesaid agreement, whereon this suit is instituted, purchased the said property from the complainants at an auction sale held by the said complainants for the price and payments as set forth, in the said agreement, and that the complainants at the time of said sale, represented the said property to have a marketable title and assured purchasers at such auction sale that they would convey the property free and clear of all encumbrances and transfer a marketable title, and would provide an abstract of title exhibiting the said title to be marketable; that the respondents entered into said agreement, relying upon the aforesaid representations of the complainants, and believed that upon full and complete payment, they would receive title free and clear of all encumbrances and marketable; that the respondents believed and were so informed by the complainants at the time of the execution of said agreement that the same provided for the giving of a marketable title, in fee simple, free and clear of all incumbrances; that they are now informed and have reason to believe that there are certain defects in the title to said property, which will require the determination thereof by a court of equity, and that thereby the complainants are not ready and able to convey a marketable title;"

That the defendants are

"ready, willing and able to carry out the terms of the contract as alleged in the bill of complaint upon the

tender by the complainants of a warranty deed, transferring to the respondents a good and marketable title to the property in fee simple, free and clear of all encumbrances whatsoever, as set forth in said contract, and have offered to perform under the terms thereof to the complainants;

That complainants

"are unable and not ready to convey the said property in fee simple, free and clear of all encumbrances whatsoever, by a good and sufficient deed, for that it appears upon an examination of the abstract of title that the title to the property is not marketable and contains certain clouds thereon, to-wit: it appears that on January 9th, 1894, DeWitt W. Scott, who was then and there the owner of the property described in the Bill of Complaint and the surrounding property, conveyed the same to three daughters of John Sanders with a provision therein that the same should not be sold or conveyed, mortgaged or otherwise encumbered until two of the daughters became of lawful age or married, which deed appears on record in Deed Book L, page 135 of the Public Records of Dade County, Florida. Thereafter it appears that on May 14th, 1895, one James McKay, U. S. Marshal for the Southern District of Florida, conveyed the property by warranty deed to Thomas H. Harris under and by virtue of an execution tested on March 29th, 1894, in the case of W. W. Sweet, Plaintiff versus Steamship Mary Diston and J. B. Demere, Wilson Weatherford and D. W. Scott as bondsmen, which deed appears of record in Deed Book O, page 5 of the Public Records of Dade County, Florida;"

That defendants

"are ready to show that the complainants in this cause derive their title from the aforesaid title from James McKay, U. S. Marshal, etc., to Thomas H. Harris, and further allege that by reason of the said deeds as hereinabove set forth, the title to the same is clouded in that it requires parol evidence outside of the record title to establish the validity of the said deed from James McKay, U. S. Marchal, etc., to Thomas H. Harris, as the same was executed almost a year later than the deed to the three daughters of John Sanders and it does not appear that the judgment became a lien upon the prop-

erty of DeWitt W. Scott nor does it appear that the judgment was sought to be collected against the original defendant in the suit wherein the judgment and execution was issued and did not have sufficient assets to pay the same giving the plaintiff therein the right to levy on the property of the bondsmen, nor does it appear that DeWitt W. Scott and D. W. Scott are one and the same persons.''

The answer also contains averments as to certain existing judgments of record and a deficiency decree against one W. I. Peters which apparently remain a lien against the property by reason of the fact that when they were rendered the said Peters owned an interest in the property subject to all of such judgments. It is averred further that soon after the making of the contract, defendants constructed a residence on the property and made other improvements at a cost of $3500.00 and have since resided thereon; that at one time they contracted to sell the property and were ready and willing to convey, but because of the clouds on the title, the purchaser refused to purchase and that they have since been unable to sell because of such clouds and the property has since depreciated in value; that being ready, willing and able to do equity, they pray that the court decree that the alleged defects are clouds upon the title to the property, and that the complainants remove such defects forthwith or within a reasonable time, or that in default of such removal complainants be decreed to repay to defendants moneys received as part of the purchase price, together with the cost or value of the improvements placed on the land by the defendants together with costs and expenses incurred by defendants and such additional sum as damages as the Court might consider proper to reimburse defendants for losses and injuries sustained by them by reason of alleged defects and for general relief.

"Upon breach of the contract by the vendor, the purchaser may affirm the contract and sue the vendor either at law for damages, or in equity for specific per-

formance; or he may disaffirm the contract and bring an action to recover back the purchase-money which he has paid; or he may sue in equity for rescission. Similarly, one who has been induced by fraudulent representations to become the purchaser of property has, upon the discovery of the fraud, three remedies open to him, either of which he may elect; He may rescind the contract absolutely and sue in an action at law to recover the consideration parted with upon the fraudulent contract; he may bring an action in equity to rescind the contract and in that action have full relief; lastly, he may retain what he has received and bring an action at law to recover the damages sustained." 39 Cyc. 1997.

The defendants (appellants) do not seek specific performance of the entire contract, nor have they made out a case for rescission and cancellation of the same. Indeed, in their brief filed here, appellants concede that in order to rescind the contract the vendor must be placed in status quo, and that they have elected not to rescind, but to affirm the contract. There is no contention here that the defendants by their answer seek the adjudication of a lien against the property for the amount of the purchase money paid by them under the terms of the contract, nor is there any basis in the pleadings for such a contention.

In Leusman v. Kyle, 97 Fla. 465, 121 So. 464, a suit seeking *rescission* of a contract for the purchase and sale of real estate and also requiring the refund of that part of the purchase price which had been paid to the vendors upon the ground that there were certain defects and incumbrances on the title, the bill of complaint did not allege that the vendees gave notice to the vendors that the alleged incumbrances and defects were held and considered to be material, nor that any demand was made that they be cured. It was held that the bill was subject to general demurrer.

In Leesburg State Bank v. Lyle, 99 Fla. 535, 126 So. 791, this Court said:

"If the plaintiff had brought his suit merely to recover

the purchase money which he had paid on the lands he would have had no standing in a court of equity. His proper remedy would have been by a suit in general assumpsit.''

However,

''If the contract is executory and remains in force, not having been rescinded or otherwise lawfully terminated, general assumpsit will not lie. The action under the latter circumstances must be in special assumpsit for a breach of the contract.'' Cox v. Grose, 97 Fla. 848, 122 So. 513.

The facts set up in the answer are not sufficient as a basis for relief in equity and are insufficient to establish an equitable counterclaim.

Assuming, without deciding, that the averments of the answer are sufficient as a basis for a legal counterclaim, the question arises, can a legal counterclaim be set up under the provisions of Section 4906, Compiled General Laws of Florida, 1927 (Chapter 6907 Laws of Florida, 1915.)

This question has arisen a number of times in the Federal Courts under the new Federal Equity Rule 30, which our statute closely follows; and in settling the question, the decisions of the District Courts and of the Circuit Courts of Appeal are not in accord.

The right to set up a legal counterclaim has been denied in General Electric Co. v. Minneapolis Elec. Lamp Co., 10 Fed. (2d) 851, 856; Summit Coal Co. v. Southern Cotton Oil Co., 24 Fed. (2d) 48; Nowata Oil & Refining Co. v. Elliott, 32 Fed. (2d) 349; Hyde v. Blaxter, 299 Fed. 167; and Fleming Bros. Lbr. Co. v. McDonald Amusement Co., 36 Fed. (2d) 483.

The above cases cite American Mills Co. v. American Surety Co., 260 U. S. 360, 67 L. Ed. 306, 43 Sup. Ct. 149, to sustain the conclusion stated.

In Turner v. Utley, 93 Fla. 910, 915; 112 So. 837, we did say that

''Substantially all authorities hold or concede the proposition that, *prima facie*, a defendant is entitled to seek

by way of counter claim against the complainant, severally, or against the complainant and co-defendant or other person jointly or in the alternative, any appropriate relief cognizable in a court of equity which such defendant might have claimed in an action brought by himself against the complainant, or against the complainant and such other persons, respectively, although such defendant cannot join a third person to be a joint counter-complainant with himself in a counter claim against the original complainant or against such complainant and a third person.''

From which it may be inferred that a legal counterclaim may not be interposed in an equitable proceeding.

There are statements in the decision of this court in Hitchcolk vs. Mortgage Securities Company, 95 Fla. 147, 116 So. 244, that militate against such a contention, but in so far as the opinion in that case conflicts with this opinion it must be and the same is hereby overruled.

The reason for holding that a defendant may not set up a legal counterclaim growing out of the transaction involved in an equitable proceeding is that such a counterclaim would be in conflict with the constitutional guaranty of a trial by jury. It is sometimes insisted by defendants who desire to set up a legal counterclaim in an answer to a bill in equity that it is within their power to waive a jury trial and to submit to a trial by the court sitting in equity. In referring to such a contention, Judge Kennamer, in Nowata O. & R. Co. v. Elliott, supra, said (and we quote it with approval):

''The answer to such a contention is that the plaintiff has the same guaranty to a jury trial in law actions as the defendant, and has the right to a jury trial in resisting claims which are for law.''

In American Mills Co. v. American Surety Co., supra, Mr. Chief Justice Taft, speaking for the Court said:

''The respondent contends that while this may be correct, the counterclaim growing out of the same transaction must be an equitable claim, and not a legal one, as here. We concur in this view.

"The new Equity Rules were intended to simplify equity pleading and practice by limiting the pleadings to a statement of ultimate facts without evidence, and by uniting in one action as many issues as could conveniently be disposed of. But they normally deal with subject-matter of which, under the dual system of law and equity, courts of equity can properly take cognizance. They certainly were not drawn to change in any respect the line between law and equity as made by the Federal statutes, practice, and decisions when the rules were promulgated. By the construction which petitioner would put upon Rule 30, it is an attempt to compel one who has a cause of action at law to bring it into a court of equity and then try it without a jury whenever the defendant in that cause can find some head of equity jurisdiction under which he can apply for equitable relief in respect of the subject matter. The order of procedure, as between the law and equity sides in such cases, always has been that the equity issue is first disposed of by the chancellor, and then, unless that ends the litigation, the original plaintiff may have his action at law and his trial by jury secured him by the 7th Amendment of the Constitution. Liberty Oil Co. v. Condon Nat. Bank, decided November 26, 1922, (260 U. S. 235, ante, 232, 43 Sup. Ct. Rep. 118). Petitioner's construction of Rule No. 30 would deny the successful defendant in the equity action this right. Petitioner seeks to avoid the dilemma by the suggestion that the rule would be satisfied by merely pleading the action at law without proving it; but this would be futile. The counterclaim referred to in the first part of the paragraph must therefore be an equitable counterclaim,—one which, like the set-off or counterclaim referred to in the next clause, could be made the subject of an independent bill in equity. The counterclaim and the set-off and counterclaim in the two clauses are in pari materia except that the first grows out of the subject-matter of the bill and the other does not. That which grows out of the subject-matter of the bill must be set up in the interest of an end of litigation. That which does not may be set up, if the defendant wishes, in one proceeding in equity quickly to settle all equitable issues capable of trial between them in such a proceeding, even though

they are not related. Buffalo Specialty Co. v. Van Cleef, 217 Fed. 91. The formality of cross bills is not required, and the rule goes as far as possible to facilitate the prompt disposition of equitable controversies between the same litigants. The rule should be literally construed to carry out its evident purpose of shortening litigation, but the limitation of counterclaims to those which are equitable is imperative. Equity Rule 30 was evidently suggested by order 19, Rule 3, of the English Practice; but, as the division between equity and law jurisdictions does not now obtain in the English courts, the English rule applies to all action, either at law or in equity,—Hopkins, Fed. Eq. Rules, 3d ed. p. 195,—and consideration of it does not aid us in the question we are discussing."

This Court has not followed the Supreme Court of the United States in all that is said in the above quotation (See Lovett v. Lovett, supra, and Turner v. Utley, supra), but we concur in what is said relating to the proposition that a counterclaim growing out of the same transaction must be an "equitable" claim and not a "legal one."

In Gentry-Futch Company vs. Gentry, 90 Fla. 595, 106 So. 473, the complainant Company asked for an injunction restraining the defendant who was president of the complainant but alleged to have been removed from office, from making use of certain personal property of the corporation, such as keys and books of the corporation, and to direct the return of same. An answer was filed by the defendant wherein he prayed for a receiver and also for a dissolution of the injunction, and that the attempted effort on the part of the company to discharge him be declared null and void. The circuit court dissolved the injunction, and denied the receivership but decreed that the defendant be restored to the office and that he recover his salary from the time of the attempted ouster until the date of the decree. In reviewing the case here, this court held that, "all grounds of equitable jurisdiction having been properly denied and eliminated, the court was not justified

in decreeing that the appellee be restored to the office of president and director, nor in adjudicating his right to recover the full amount of his salary from Oct. 1, 1922, to the date of the decree. This was not germane, nor incidental, to any ground of equitable jurisdiction existing in the case; all such having been extinguished x x x x The appellee should have been relegated to his legal remedies as to recovery of salary and as to restoration to office.''

The bill in the instant case does not state a case for relief in equity nor does the answer set up a counterclaim that could be made the subject of an independent bill in equity. Therefore, under the opinion in Gentry-Futch vs. Gentry, *supra*, a decree could not be rendered herein on a cause of action, if any, triable in a court of law.

In the instant case, complainant objected to the matter sought by defendants to be set up as a basis for affirmative relief, in due time, by filing exceptions thereto and making a motion to strike it. In entering the order appealed from no reversible error was committed by the court.

Having concluded that the matter expunged from the answer is not sufficient to comply with the provisions of Section 4906, Compiled General Laws of Florida, 1927, and to keep the cause before the Court, the court will take notice of the insufficiency of the bill although the appellants have not noticed it. Cook v. Pontious, 98 Fla. 373, 123 So. 765; Micou v. McDonald, 55 Fla. 776, 46 So. 291, City of Jacksonville v. Massey Business College, 47 Fla. 339, 36 So. 432; Williams v. Peeples, 48 Fla. 316, 37 So. 572.

The order appealed from is affirmed and the cause is remanded with directions to dismiss the bill without prejudice.

PER CURIAM.—The record in this cause having been considered by the court and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered, adjudged and decreed by the Court that the order of the court below should be, and

the same is hereby, affirmed and the cause is remanded with directions to dismiss the bill without prejudice.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.